JOHN JENKINS and JOHN G. HEWES *vs.* ALLEN HAY and THOMAS HAY.

*Appeal bond—Evidence—What may be Recovered in an Action on an Appeal bond—When the Right of Action on an Appeal bond accrues—What constitutes a Breach of the Condition of an Appeal bond —Interest not allowed on Costs—Practice in the Court of Appeals.*

A decree was passed on the 10th of June, 1863, for the sale of certain mortgaged real estate ;—on the 10th of September, following, an appeal was taken from this decree, and on the same day an appeal bond, dated the 13th of August, previous, was filed in the cause and approved by the Court. The decree was affirmed in the appellate Court on the 4th of October, 1864, with costs to the appellees. An action was brought on the appeal bond by the appellees—the declaration setting out the condition of the bond and alleging breaches. The bond referred to the decree, the Court and the parties in the cause. HELD:

1st. That the bond speaks from the time of its filing and approval, and not from the day of its date.

2d. That the bond being properly described and counted on in the pleadings, was admissible in evidence thereunder.

3d. That the decree and the proceedings in which it was passed, were sufficiently described in the declaration, to allow the record in the equity case, and the record of the affirmance of the decree by the Court of Appeals, to be admitted in evidence under it.

4th. That the plaintiffs were entitled to recover under that declaration for all loss and injury, coming within the terms of the condition of the bond, which they could show had resulted to them by reason of the appeal, at least to the time of suit brought ; and were not confined to the recovery merely of the costs in the appellate Court and loss of interest.

5th. That the action on the bond was properly maintainable, notwithstanding, that at the time the suit was instituted, there had not been a final distribution of the fund derived from the sale of the mortgaged property.

6th. That the affirmance of the decree, was a breach of the condition of the bond, and a right of action thereon then accrued to the plaintiffs.

7th.  That the record of the equity case and of the case in the Court of Appeals, were competent evidence to establish as against the surety in the appeal bond, the amount of the plaintiffs' mortgage claim against the principal.

8th.  That the costs of the records used in evidence at the trial could not be recovered as part of the plaintiffs' claim. and thus bear interest from the date of the judgment; they were part of the costs of the trial, to be taxed by the clerk, and was recoverable only as such.

9th.  That interest upon the whole principal of the mortgage debt, from the date of the appeal to the date of the affirmance of the decree, was not allowable, inasmuch as the property did not sell for enough to pay this amount, after payment of expenses, commissions and prior liens;—interest was allowable upon the sum which was applicable to the mortgage debt, as of the date of the appeal, from that date to the date of the affirmance of the decree, and as this was the amount of interest actually lost by reason of the appeal, and was payable immediately upon the affirmance of the decree, interest thereon from that date to the time of trial was proper to be allowed.

By the Chancery practice of this State, the proceedings prior to the decree though not recited in are in effect parts of it. and all errors in such proceedings are open for revision, on appeal from the decree.

APPEAL from the Superior Court of Baltimore City.

At the trial below the defendants took the following exceptions :

*First Exception:* The plaintiffs offered to read to the jury in support of the issue joined on their part the appeal bond, (the execution whereof was admitted,) with proof that the same was on the 10th day of September, 1863, filed in the Circuit Court for Baltimore county, sitting as a Court of Equity, in a cause wherein Allen Hay and Thos. Hay were complainants, and John Jenkins, Tabitha Jenkins, Frederick Dawson and Mathias Linthicum, were defendants, in which cause a decree was passed on the 10th day of June, 1863, directing the sale of certain real and leasehold property in the proceedings in said cause.   To the reading of this bond under the pleadings in the case, the defendants objected, but the Court overruled the objection and permitted the bond with

the evidence aforesaid, to be read to the jury; to this ruling and the admission of the bond accompanied by the evidence aforesaid, the defendants excepted.

*Second Exception:* The plaintiffs produced and offered to read to the jury the record of the proceedings in the cause in the Circuit Court for Baltimore county, sitting as a Court of Equity, wherein Allen Hay and Thomas Hay, trading as Allen Hay & Co. of New York, were complainants, and John Jenkins and Tabitha his wife, Frederick Dawson and Mathias Linthicum were defendants, the record of the proceedings of the same cause in the Court of Appeals, and the record of the proceedings in a case in the Circuit Court for Baltimore county, wherein George P. Whittaker, was plaintiff, and the aforesaid John Jenkins was defendant, and also introduced evidence relative to the sale of the mortgaged premises, under an execution in the last named case, to the appellant Howes, and also to show that property in some parts of the State, had depreciated in value, between the date of the appeal and the date of the affirmance of the decree appealed from, owing to the difficulty of obtaining labor by reason of the successive drafts for military purposes, and the emancipation of the negroes. All of which testimony was taken subject to exception.

The plaintiffs thereupon presented the two following prayers:

1. That the plaintiffs are entitled to recover in this cause the sum of $25.25, their costs in the Court of Appeals, together with the interest on $6,400, from the 10th day of September, 1863, to the 4th of October, 1864, and interest on said last mentioned sum from the 4th day of October, 1864, to the present time, together with any other loss or injury which the jury may believe from the evidence in the cause the plaintiffs sustained by reason of the staying of the decree, to stay which the bond sued on in this case was given.

2. That the plaintiffs are entitled to recover in this cause the sum of $25.25, their costs in the Court of Appeals, and

the· sum of $59.73, costs of records offered in evidence, together with the interest on $6,400, from the 10th of September, 1863, to the 4th of October, 1864, and.interest on said last mentioned sum from the 4th day of October, 1864, to the present time.

And the defendants thereupon asked the Court to instruct the jury as follows:

1. That the appeal bond mentioned in the declaration and offered in evidence in this case, was not legally sufficient and operative to stay execution of the decree mentioned in said bond under and in virtue of the appeal mentioned in the record offered in evidence, and taken by Jenkins, (one of the defendants,) on the 10th day of September, 1863, from said decree.

2. That there is no sufficient evidence that the decree set forth in the record of proceedings in the Circuit Court for Baltimore county, is the same decree mentioned in the declaration in this case.

3. That the only appeal proven in this case from the decree of the Circuit Court for Baltimore county mentioned in the evidence, is not the appeal which the defendants in this case bound themselves by the bond given in evidence to prosecute with effect, and there is therefore no proof of any breach of said bond.

4. That no evidence has been offered by the plaintiffs showing that any damage was caused by the delay in executing the decree mentioned in the record, other than the costs incurred in the Courts by reason of such appeal.

5. That the record of the proceedings in the Circuit Court of Baltimore county, which has been offered by the plaintiff, is inadmissible in evidence under the declaration in this case and must be excluded from the consideration of the jury.

6. That the record of proceedings in the Court of Appeals offered by the plaintiffs is inadmissible in evidence under the declaration in this case.

Jenkins and Hewes *vs.* Hay.

7. That the said records are not, nor is either of them competent evidence against the defendant, Hewes, of the amount of the plaintiff's mortgage claim against Jenkins.

8. That the record of the proceedings in the case of *Whitaker vs. Jenkins*, as offered by the plaintiffs, is not competent evidence in this action.

9. That the plaintiffs have given no evidence of any damages for which it is competent for them to recover in this action beyond their costs in the Court of Appeals and in certifying the decision of the Court of Appeals to the Circuit Court of Baltimore county, nor can they recover even these costs if the jury shall find from the evidence that the complainants have charged and collected the same out of the proceeds of the sale of the property in question.

10. That there is no evidence of depreciation in value of the property in question and loss arising therefrom, by reason of the delay caused by the appeal mentioned in this case.

11. That to entitle the plaintiffs to recover in this case, it was necessary that the amount to be recovered by them from the sale of the land in question, should be first ascertained, and inasmuch as it appears by the record offered in evidence by the plaintiffs, that the fund arising from such sale had not been adjudicated and distributed by the Court in which the equity cause was pending, prior to the bringing of this suit on the appeal bond, the plaintiffs cannot recover in this case more than the costs awarded by the Court of Appeals to the plaintiffs, because until that fund was distributed the loss or injury to the plaintiffs was uncertain and undetermined.

12. That the plaintiffs not having averred in their declaration and set forth causes of special damage, arising to them by reason of the alleged non-fulfilment of the obligation contained in the writing obligatory offered in evidence, all the evidence of special damage given in reference to the alleged depreciation in value of the property during the period specified, between the taking of the appeal and the affirmance of the decree.

The Court granted the second prayer of the plaintiffs, and rejected their first prayer, and rejected all the prayers of the defendants, except their tenth and twelfth, which were granted. To the granting of the second prayer of the plaintiffs, and to the rejection of the prayers of the defendants, (save their tenth and twelfth,) the defendants excepted, and the verdict and judgment being against them, they appealed.

The plaintiffs also took an exception, which is omitted, as it was not considered before the Court, on this appeal.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER, and ALVEY, J.

*Benjamin C. Barroll,* for the appellants:

The cause in the Circuit Court in which the appeal bond was given not being ended, *and the fund distributed* at the time of the institution of the suit on the appeal bond, said suit was prematurely brought, and the plaintiffs could not recover. You cannot sue a surety until the liabilty of the principal is fixed. As the appeal bond was executed on the 13th August, 1863, reciting an appeal *already* taken, the plaintiffs had no right to offer it in evidence and recover for an appeal taken on the 10th Sept., 1863. *Burgess vs. Lloyd,* 7 *Md. Rep.,* 199. The record, including the Auditor's account, did not establish the amount of the debt due by Jenkins to the plaintiffs so as to bind Hewes, *the surety in the appeal bond.* As against Hewes, there was no evidence of the amount of this debt, and this was essential before a loss to the plaintiffs by reason of the appeal could be shown. Hewes was not a party to the equity cause, and as against him it was essential to prove the debt due by Jenkins, and that the land did not sell for enough to pay that debt, and that loss occurred by the delay caused by the appeal, and the amount of such loss.

In the second prayer of the appellees granted; the Court committed several errors:—in allowing a recovery at all,—

in allowing a recovery for the cost of the records,—in allowing interest upon interest,—in allowing a recovery of interest, none being mentioned in the *claim* filed with the nar. (under Act of 1864,) and there was collected after the appeal $260 of the same debt, which went to extinguish the accruing interest pending the appeal. *Gwinn vs. Whitaker*, 1 *H. & J.*, 754. When a party files a claim under oath, according to the terms of the Act of 1864, ch. 6, sec. 8, he is specially confined to the matter set out in such claim, and cannot go outside of it. See *Act of* 1858, *ch.* 323, and *Mailhouse vs. Inloes, et al.*, 18 *Md. Rep.*, 333, which decides the identical question.

The subsequent approval of the bond did not alter the obligation into which the surety had previously entered; it only confirmed that obligation, which was to be responsible for the result of an appeal declared to be *already* taken; not to become responsible for an appeal to be taken nearly a month afterwards. The bond operates as an *estoppel*, and the fact of the appeal being already taken, cannot be questioned or disproved. *Wallis, et al. vs. Dilley, et al.*, 7 *Md. Rep.*, 240; *Morgan vs. Blackiston*, 5 *Har. & Johns.*, 61. When a bond is approved, it operates from the date of its *execution*. The approval, *ex vi termini*, pre-supposes a completely executed obligation. The responsibility of a "*surety*" is never extended beyond the terms of the obligation into which he enters. And especially can it not be changed or enlarged by others, without his privity or consent. The cause of action as set out in the claim filed with the nar. "*was loss by the depreciation of the property pending the appeal, and costs in the Court of Appeals.*" And the Court granted the defendants' tenth prayer, which not being before the appellate Court for review, is the conceded law of the case. By this prayer, it is established that there is no evidence in the cause of any depreciation in value and loss arising therefrom, by the delay caused by the appeal. Consequently, this ruling disposed of the *right of recovery*, because the plaintiffs were confined to their claim as made. The pleadings raised the issue on the

claim filed. The granting of this tenth prayer should have prevented the Court from granting the plaintiffs' second prayer, and the Court will perceive that there is no averment of loss in the *nar*. The claim filed was clearly designed to set forth the only *cause of action* arising out of the bond. The second prayer of the defendants should have been granted, because the declaration does not give the date of the decree, the term of the Court at which it was obtained, or the party against whom it was rendered; the decree is set forth in the *nar*. in a manner entirely too vague and uncertain. It is conceded that interest during the pendency of the appeal on the debt is covered by an appeal bond. *Wood's Ex'r vs. Fulton and Starck*, 2 *H. & G.*, 71. But in this case the debt was secured by mortgage, and $260 was paid on account of the debt after the appeal. Before you can ascertain whether the appeal has caused a loss to the plaintiff or not, the amount of the debt must be shown by competent evidence, and it must be shown that the mortgaged property, after sale and final distribution of the proceeds, failed to pay said debt; and then the loss caused by the appeal. In this case the amount of the debt is assumed as against Hewes, the surety, and the suit is brought before final distribution of the proceeds of sale, and the amount of $260 paid, is not credited to the accruing interest on the debt; and on such accruing interest the plaintiffs were allowed to recover further interest from the time of the ending of the appeal to the date of the trial on the appeal bond, thus compounding the interest, and they were also allowed to recover the cost of copies of certain records which they desired to use as evidence, all of which matters, moreover, were outside of the claim which the defendants were called on by the pleadings to meet at the trial.

*John H. Thomas*, for the appellees, contended:

That they were entitled to renew their appeal after having "countermanded" it, and that their second appeal having been taken within the time allowed by law, is properly

before the Court, unaffected by any thing which was done in reference to their first. *Ward, et al. vs. Hollins, et al.,* 14 *Md. Rep.,* 166. That the issuing of their execution, which was rendered fruitless by the defendants' appeal bond, subsequently filed, did not estop them from afterwards prosecuting their appeal. *Merriam vs. Haas,* 3 *Wallace S. C. Rep.,* 687 ; *United States vs. Dashiell, Ibid,* 688.

The execution of the decree having been stayed by the appeal bond, the plaintiffs were entitled to recover the damage which had resulted to them therefrom. The undisputed proof in the cause, established by the record of the Whitaker execution, which was admissible for that purpose, was that, pending the appeal, the mortgaged property had sold for enough to pay the plaintiffs' entire claim. It was bought by Hewes, one of the defendants. He said he then considered it worth ten thousand dollars. This established its market value at that time. The trustee would have sold it for as much as it brought at Sheriff's sale under Whitaker's execution,—for as much as Hewes said it was worth. After the affirmance of the decree, it sold for $8,200, an amount insufficient to pay the complainants' mortgage claim. The damage resulting to them from the stay was therefore the amount of their claim thus lost to them, and the costs to which they had been subjected by the appeal. The Court therefore erred in refusing the plaintiffs' first prayer, and granting the defendants' twelfth. *Wood's Ex'r vs. Fulton and Starck,* 2 *H. & G.,* 75–78. The account filed with the declaration, and which was part of it, expressly claimed to recover the balance of the plaintiffs' mortgage claim thus lost to them by depreciation of the property pending the appeal. This was part of the pleading—so understood and pleaded to by the defendants, who pleaded that the defendants were not indebted under the bond for the claim made by the plaintiffs, and that the latter had not been damnified as alleged. There is, therefore, no foundation for the point made by the defendants' twelfth prayer, which was granted by the Court, but which should have been rejected. *Carter vs. Tuck,* 3 *Gill,* 250.

The plaintiffs were at least entitled to recover the interest which they lost in the interval between the 10th of September, 1863, the time when the bond was approved, and the 4th of October, 1864, the date of the affirmance. This sum became, on the affirmance, a principal debt, bearing interest from that time till paid, and in an action on the bond they were entitled to recover that and the costs to which they had been subjected. This is the principle contained in the plaintiffs' second prayer, which was granted by the Court, and on this principle the defendants' fourth prayer was refused.— There is no force in the objection that they were also allowed the costs of the records which they were obliged to get to substantiate their claim, and that they were not included in the account filed with their declaration. The costs of the records had not been incurred when their declaration was filed. They became necessary afterwards, and the plaintiffs were entitled to recover them as well as any other costs to which they had been improperly subjected. It was immaterial whether they recovered them as costs, to be taxed by the clerk, like the costs of witnesses' attendance, or as part of their claim, like the costs of the Court of Appeals.

Although the bond was dated the 13th of August, 1863, it was approved on the 10th of September, following, and on that day filed in the equity proceedings. The bond speaks from the time of its approval, not from the day of its date. *United States vs. Le Barron,* 19 *Howard S. C. Rep.,* 73–77 ; *Le Barron vs. United States,* 4 *Wallace S. C. Rep.,* 642. The record shows that the appeal had then been taken, and that the bond was filed to stay the operation of the decree, which was afterwards affirmed. Even if it had been otherwise, the defendants were estopped from denying that the appeal *had been taken. Wallis, et al. vs. Dilley, et al.,* 7 *Md. Rep.,* 237. It was filed in the cause, the record of which is referred to in the defendants' second, third, fifth and sixth prayers, which proceedings were identified, and these prayers were therefore properly rejected. The bond would be treated as referring to

the proceedings between the parties even if they had been inaccurately described. *Frantz vs. Smith*, 5 *Gill*, 280; *Woods' Ex'r vs. Fulton and Starck*, 2 *H. & G.*, 77. The Court of Appeals' record was not only admissible in evidence, but the only legitimate proof as against both defendants, that the decree had been affirmed. The defendants' sixth prayer was therefore properly rejected. All of said records were admissible in evidence as against Hewes. If not technically a party to the proceedings, his liability was established by them, and for that reason they were admissible against him. *Chicago City vs. Robbins*, 2 *Black S. C. Reps.*, 418; *Robbins vs. Chicago City*, 4 *Wallace S. C. Rep.*, 657; *Cecil vs. Cecil*, 19 *Md. Rep.*, 79. But he had made himself a party, not only by signing the bond, but by filing his written assent to the ratification of the trustees' sale. And by refusing to allow Jenkins' appeal to be dismissed until he had an opportunity of removing his crops from the mortgaged premises, so that the mortgagees could get no benefit from them. The seventh prayer of the defendants was therefore also properly refused. In addition to these reasons it was inconsistent with their eleventh prayer. The latter asserts that the Auditor's account distributing the fund must be ratified before the plaintiffs have any right of action. The other prayers assert that the proceedings under which it was ratified are of no avail as between the parties to these proceedings. The record of proceedings under Whitaker's execution was admissible to show depreciation in the value of the property pending the appeal. But whether it was or not, the Court, by granting the defendants' twelfth prayer, instructed the jury that the plaintiffs were not entitled to recover for such depreciation, and the defendants were therefore not prejudiced by the refusal of their eighth prayer. They got the benefit of it by the granting of their twelfth, which instructed the jury that the record of the proceedings was not to be considered by them as an element of their verdict.

---

Jenkins and Hewes *vs.* Hay.

---

It was not necessary for the plaintiffs to wait for a final ratification of the auditor's account before bringing their suit on the bond. The affirmance of the decree consummated their right to sue and recover such damages as they had sustained by the staying of it. The amount of the damages might have been proven without resort to the auditor's account. After it was finally ratified, it created no new fact as to the amount of the debt, but was only the conclusive judicial determination of a fact already existing. The case is unlike one of a suit on a bond, for violation of a duty which consists only in obeying the orders of a Court where the duty does not arise, and there can be no breach of it until such order is put.

The proper appropriation of the amount collected under the execution against Jenkins, pending the appeal, is not properly involved in this appeal. If it be, then such application should be made by the Court as the justice of the case requires. The plaintiffs are equitably entitled to the payment of their whole debt, and such an appropriation should be made as will, as far as possible, produce that result. It ought to be applied to that portion of the debt for which the security was most precarious—to the interest which first accrued—to that which had accrued before the appeal bond was filed, not to that which was accruing when the collection was made, and which never would have existed but for the inequitable appeal from a decree passed by consent. *Field vs. Holland,* 6 *Cranch Supreme Court Reps.,* 8; *Calvert vs. Carter,* 18 *Md. Rep.,* 73; *Allston vs. Contee,* 4 *H. & J.,* 351, 358. The Court erred in granting the defendants' tenth prayer that there was "no evidence of depreciation in the value of the property in question, and loss arising therefrom by reason of the delay caused by the appeal." The result of the sale under Whitaker's execution—Hewes' own opinion that the property was then worth $10,000, pending the appeal, the fact that it brought at the sale of the trustee, made as soon as possible after the affirmance of the decree, only $8,200, show con-

clusively that it had depreciated in the meantime, and that nothing but the appeal prevented the plaintiffs from realizing their whole claim.

MILLER, J., delivered the opinion of this Court.

This appeal presents for review the action of the Court below admitting in evidence the bond sued on, granting the appellees' second prayer, and rejecting ten of the prayers offered by the appellants. The suit was instituted on the 4th of February, 1865, upon an appeal bond given to the plaintiffs, Allen Hay & Co., by the defendants, Jenkins and Hewes, to stay the operation of a decree for the sale of certain mortgaged real estate, passed on the 10th of June, 1863, in an equity cause in the Circuit Court for Baltimore county, in which the plaintiffs were complainants, and Jenkins and others were defendants. The appeal was taken on the 10th of September, 1863, and on *that day* the bond sued on was filed in the cause and *approved* by the Court. The bond bears date the 13th of August, and recites that " the said John Jenkins hath prayed an appeal" from the decree therein referred to, and the appellants insist they are responsible only for an appeal taken on or prior to the day of the date of the bond, and not for the result of an appeal subsequently taken on the 10th of September; and that by this recital the plaintiffs are estopped from saying or showing an appeal had not been taken on or prior to the 13th of August. The answer to this position is, that the bond speaks from the time of its filing and approval, and not from the day of its date. *United States vs. Le Barron*, 19 *How.*, 73, and 4 *Wallace*, 642. It refers to the decree, the Court and the parties in the equity cause, and in absence of all proof of any other appeal, it would be, as was said in *Wallis vs. Dilley*, 7 *Md. Rep.*, 248, " a mere burlesque of justice," to intend that this bond does not refer to the appeal thus taken on the day of its filing and approval. The same authorities in the Supreme Court show the bond was properly described and counted on in the plead-

ings, and was admissible in evidence thereunder. The declaration also sufficiently describes the decree and the proceedings, in which it was passed to allow the record in the equity case, and the record of the affirmance of the decree by the Court of Appeals, to be admitted in evidence under it. And we are further of opinion the plaintiffs can recover under their declaration, for all loss and injury coming within the terms of the condition of the bond which they can show have resulted to them by reason of the appeal, at least, to the time of suit brought, and are not confined to the recovery merely of the costs in the appellate Court.

The decree was affirmed on the 4th of October, 1864. The property was sold by the trustee on the 19th of December, 1864, for $8,200, and this sale was finally ratified, by consent, on the 23d of the same month. The Auditor's account distributing the proceeds and leaving $1,493.27, still due and unpaid to the complainants, on account of the principal and interest of the mortgage debt, was stated January 23d, 1865, but was not finally ratified until the 5th of April, following, and it is objected by the appellants that as the equity case was not ended by a final distribution of the fund at the time the suit on the bond was instituted, the action was prematurely brought and the plaintiffs cannot recover. This objection cannot be sustained. The affirmance of the decree was a breach of the condition of the bond and a right of action thereon then accrued to the plaintiffs. Moreover at the time of suit the sale had been made and finally ratified, and all the damages resulting from the appeal had then in fact been sustained, and the defendants' liability therefor had then become fixed. How much the proceeds of sale fell short of paying the mortgage debt was mere matter of calculation from existing data, and might have been proven without resort to the Auditor's account. The final ratification of that account created no new fact as to the amount of the debt, or the loss sustained, and could in no way increase or diminish the amount the plaintiffs were entitled to recover.

Another point presented by one of the rejected prayers is, that neither the record of the equity case, nor of that in the Court of Appeals is competent evidence, against Hewes the surety in the bond, of the *amount* of the plaintiffs' mortgage claim against Jenkins. Had the decree, on its face, specified the amount of the mortgage debt, to pay which the property was to be sold, there could be no doubt the decree itself would have been not only admissible, but conclusive evidence of this amount as against the surety, because by the terms of his bond given to stay the decree, he stipulates that the appeal, the only purpose of which is to correct errors in the decree, shall be prosecuted with effect. By our chancery practice the proceedings prior to the decree, though not recited in, are in effect parts of it, and all errors in such proceedings are open for revision on appeal from the decree. The bill states particularly the amount of principal due on each of the notes secured by the mortgage, and the times from which interest was due and unpaid, and all the allegations of the bill were admitted by Jenkins to be true before the decree passed. The amount of the mortgage debt was thus as certainly ascertained by these antecedent proceedings, as if the calculation had been made and the result stated on the face of the decree. We perceive, therefore, no reason why these records were not competent evidence to establish, as against Hewes, the amount of the mortgage debt. The record in the case of *Whitaker vs. Jenkins,* was also admissible in evidence for the purpose of proving the *facts* that the judgment therein set out had been rendered and execution issued upon it.

This disposes of all the questions presented by the first exception, and by the appellants' rejected prayers; the rulings of the Court below to this extent were correct and are affirmed.

In granting the appellees' second prayer there was error in two particulars, affecting the verdict in this case only in a slight degree, but which nevertheless cannot be overlooked:

1st. It was error to allow the costs of the records, used in evidence at the trial, to be recovered as part of the plaintiffs' claim, and thus bear interest from the date of the judgment. The expense of procuring such documentary proof differs in no respect from that of the attendance of witnesses who give oral testimony. It formed part of the costs of the trial to be taxed by the clerk, and was recoverable only as such costs.

2d. It was also error to allow, in this case, interest upon $6400, the whole principal of the mortgage debt, from the date of the appeal to the date of the affirmance of the decree, for the property did not sell for enough to pay this amount after payment of expenses, commissions and prior liens. Loss of interest accruing pending the appeal, is unquestionably covered by this bond. But the decree appealed from being a decree *in rem.*, the obligors in the bond were not thereby bound on affirmance of the decree to pay the mortgage debt, nor to make good to that extent any deficiency in the proceeds of the sale of the land; nor did they stipulate that the land should sell for enough to pay even the principal of this debt. To ascertain, therefore, the actual loss of interest, we must assume the land would have sold, at the date of the appeal, for $8,200, and compute interest on *so much* of this sum as would *then* have been applied to this debt. By this rule, and according to our calculations from the data furnished by the record, the sum of $6,289.91 would have been applicable to the plaintiffs' claim as of the 10th of September, 1863. Interest on this sum from that date to the 4th of October, 1864, when the decree was affirmed, is therefore the amount of interest actually lost by reason of the appeal, and as the defendants were bound to pay the same immediately upon the affirmance of the decree, it is proper that interest upon it from that date to the time of trial should be allowed. For these errors the judgment must be reversed, and as the case must go back under a *procedendo*, when the question will again arise, we deem it proper to express briefly our opinion upon the principal point presented by the plaintiffs' excep-

tion, though that exception is not before us on this appeal. Under this bond the plaintiffs are not confined to the recovery of costs in the appellate Court and loss of interest, but may recover for any further loss or injury which they can show proceeded from the suspension of the decree, caused by the filing of the bond. *Wood vs. Fulton and Starck,* 2 *H. & G.,* 78. If, therefore, they can prove that at the date of the appeal, or shortly thereafter, the property was worth in the market, or would then have sold for a *greater* sum than $8,200, such difference is clearly a loss resulting from the appeal for which the bond is answerable. The fact that on the 30th of September, 1863, the property was sold at sheriff's sale, subject to all incumbrances, for $125, is evidence proper to go to the jury on this subject, as showing its then market value was the amount of these incumbrances, as of that date, added to the $125. But the mere declaration of Hewes at that sale, that he considered the property worth $10,000, and the testimony of Mr. Thomas as stated in the record relative to the depreciation in value of property in some parts of the State, between September, 1863, and October, 1864, is not evidence from which the jury ought to be permitted to find this property was then worth, or would then have sold for $10,000, or any other specific sum in excess of the $8,200, for which it was subsequently sold by the trustee.

*Judgment reversed and*
*procedendo awarded.*